UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ALEXANDRA HERNANDEZ,

                Plaintiff,

-against-

JO ANNE B. BARNHART,
Commissioner of Social Security

                Defendant.
----------------------------------------------------------------X

MEMORANDUM AND ORDER
04-CV-0575 (NGG)

**NOT FOR PUBLICATION**

GARAUFIS, District Judge.

      Alexandra Hernandez ("Plaintiff") brings this action for review of the final determination of the Commissioner of Social Security Jo Anne B. Barnhart ("Commissioner") which found that the Plaintiff and her son's benefits would be reduced because another child was found entitled to survivor benefits from the deceased wage earner, Roberto Hernandez ("decedent"), from whose earnings the Plaintiff was receiving benefits. The Plaintiff contends that the child's mother, Aracelis Nunez, did not present sufficient evidence that the decedent was the father of her son, Kevin Hernandez, who was born shortly after the decedent's death. The defendant cross-moves for judgment on the pleadings, contending that the Commissioner's decision is supported by substantial evidence in the record, and is based upon the application of the correct legal standards. For the reasons set forth below, the Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

**I.    BACKGROUND**

      The decedent, Roberto Hernandez, died on June 25, 1994 of a gunshot wound to the head. (Transcript ("Tr.") 63.) The Plaintiff and the decedent were married on December 10, 1988 but

had been separated since 1990. (Tr. 131-32, 146.) According to the Plaintiff's testimony, they did not divorce because the decedent never asked for a divorce. (Tr. 147.) The Plaintiff and the decedent had one child, Robert Hernandez, who was born on March 27, 1989. (Tr. 130, 132.) Following their separation, the Plaintiff saw the decedent approximately once every two months on family occasions, but otherwise was not in contact with him. (Tr. 146-47.)

On July 5, 1994, shortly after the decedent's death, the Plaintiff filed applications for Mother's and Surviving Child's Insurance Benefits on behalf of herself and Robert, as survivors of Roberto Hernandez. (Tr. at 26-31). Benefits were awarded pursuant to these claims. (Tr. 16.) The application stated that although Alexandra and Roberto Hernandez were married, they had been living apart since February 15, 1989. (Id.)

At the time of his death in 1994, the decedent had been residing with Aracelis Nunez for the past four and one-half years. (Tr. 62-63, 103.) According to Nunez, she and the decedent never married because the Plaintiff would not consent to a divorce. (Tr. 92.) At the time of the decedent's death, Nunez was six and one-half months pregnant with Kevin Hernandez ("Kevin"). (See Tr. 34-36.) Kevin was born on September 9, 1994. (Tr. 34-36.)

On August 12, 1999, Nunez filed an application for Surviving Child's Insurance Benefits on behalf of Kevin as a survivor of Roberto Hernandez. In support of Kevin's application for benefits, Nunez submitted a notarized New York City Department of Health Acknowledgment of Paternity form signed by the decedent on June 17, 1994, two and one-half months prior to Kevin's birth, and one week before the decedent's death. (Tr. 74.) Nunez also provided a separate statement dated June 6, 1995 by Fredesvinda Guzman, the notary public who signed the Acknowledgment of Paternity, which stated that she knew that the decedent and Nunez lived

together as "common law husband and wife." (Tr. 76.)  The notary further stated that Nunez was pregnant with the decedent's child.  (Id.)  In addition, Nunez submitted a Social Security Administration ("SSA") Child Relationship Statement by the decedent's father in which he declared that Kevin was the son of the decedent.  (Tr. 87-91.)  Jacqueline Hernandez, the decedent's sister, also submitted a letter attesting to the fact that the decedent and Nunez were romantically involved and that Kevin was the son of the decedent.  (Tr. 102.)  Additional evidence submitted by Nunez included: 1) a State of New York Human Resources form in which the decedent agreed that, as of March 29, 1992, he would pay excess rent for the apartment occupied by he and Nunez in East Elmhurst, New York (Tr. 58); 2) utility bills for the East Elmhurst address in the decedent's name from October 1992 (Tr. 59); 3) airline tickets for a trip to Puerto Rico in the decedent and Nunez' names (Tr. 61); 4) a receipt for the decedent's funeral expenses paid for by Nunez (Tr. 65-67); and 5) pictures of the decedent and Nunez together, including a picture of the two of them while Nunez was pregnant with Kevin (Tr. 109-11).  The SSA determined that Kevin was the child of the decedent and on August 15, 1999, the SSA advised the Plaintiff that her benefits, as well as those of her son would be reduced because Kevin would be receiving his share of survivor benefits.  (Tr. 39-40.)

   The Plaintiff subsequently moved for reconsideration (Tr. 43-44) and the SSA determined that its initial determination that the Plaintiff's benefits had to be reduced because Kevin was also entitled to benefits was correct.  (Tr. 47-54.)  The Plaintiff then requested a hearing (Tr. 55), which was held on April 15, 2002 before Administrative Law Judge ("ALJ") Eileen Burlison in which the Plaintiff appeared with counsel.  (Tr. 128-50.)   The Plaintiff contended that while the decedent did have a romantic relationship with Nunez, and it is possible that Kevin is the

3

decedent's son, there was no clear evidence of paternity. (Tr. 135, 143, 148.) The Plaintiff also noted that Nunez declined to pursue a separate paternity action in family court and to submit DNA evidence. (Id.; see Tr. 46, 77-85.) Pointing to alleged differences in other documents signed by the decedent, the Plaintiff also claimed that the decedent's signature on the Acknowledgment of Paternity was forged. (Tr. 137-38.)

On September 20, 2002, the ALJ determined that, based on the evidence in the record, Kevin was entitled to Surviving Child's Insurance Benefits. (Tr. 16-20.) The Appeals Council denied review on September 16, 2003. (Tr. 5-8.) This *pro se* action followed.

## II. APPLICABLE LAW

### A. Standard of Review

It is "well settled that the Secretary's findings of fact may not be disturbed on review unless not supported by 'substantial evidence.'" Adams v. Weinberger, 521 F.2d 656, 658 (2d Cir. 1975); see also Becker v. Secretary of Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990) (applying substantial evidence standard to Commissioner's benefits eligibility determination for illegitimate child that applied New Hampshire law, which required "clear and convincing evidence" of paternity). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Beckles v. Barnhart, 340 F.Supp.2d 285, 287 (E.D.N.Y. 2004) (internal citation and quotation marks omitted). In determining whether such substantial evidence exists, the court "'must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including, any contradictory evidence and evidence from which conflicting inferences may be drawn.'" Id. at 287 (quoting Rivera v. Sullivan, 771

4

F.Supp. 1339, 1351 (S.D.N.Y. 1991)).

      **B.**      **Standard for Entitlement to Surviving Child's Insurance Benefits**

Section 203(a) of the Social Security Act ("Act") limits the total amount of benefits payable monthly on an individual's earnings record. 42 U.S.C. § 403(a). When the sum of all benefits otherwise due for a month exceeds this limit, each benefit to be paid out is proportionally reduced so that the total is not greater than the prescribed maximum. Id.

In order to qualify for child's survivor benefits under the Social Security Act, a child must have been dependent upon the insured parent at the time of the parent's death. 42 U.S.C. § 402(d)(1)(C). Although a legitimate child is conclusively presumed to be dependent upon his natural parents, 42 U.S.C. §§ 402(d)(3)(A) and 416(e)(1), illegitimate children must meet one or more further qualifying provisions. Section 216(h) of the Act, which sets forth the various guidelines under which it may be determined whether an individual is the dependent child of an insured wage earner, provides that an applicant who could take intestate personal property under the laws of the State in which the insured wage earner was domiciled at the time of his death will be considered a dependent child for the purposes of the Act. 42 U.S.C. § 416(h)(2)(A). Article 4-1.2(a)(2) of the Estates, Powers and Trusts Law of New York (the State in which Roberto Hernandez was domiciled at the time of his death) provides, in relevant part, that "[a] non-marital child is the legitimate child of his father so that he and his issue inherit from his father ...if ... (C) paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own." N.Y. E.P.T.L. § 4-1.2(a)(2)(C). In addition, an applicant may also be deemed to be the child of an insured individual if the insured individual "had acknowledged in writing that the applicant is his ... son."

42 U.S.C. § 416(h)(3)(C)(i)(I).

## III. DISCUSSION

The ALJ correctly concluded that Kevin was the son of the decedent and therefore, entitled to surviving child's benefits. Paternity may also be established under the Act where the deceased individual had "acknowledged in writing that the applicant is his or her son or daughter." 42 U.S.C. §216(h)(3)(C)(i)(I). Here, the decedent completed a New York City Department of Health Acknowledgment of Paternity, which was signed and notarized shortly before his death. (Tr. 74.) Although the Plaintiff raised concerns over the document's authenticity, the ALJ thoroughly questioned the Plaintiff and her attorney on this issue and ultimately determined that the document was authentic. (See Tr. 17-19, 136-138.) With nothing more than sheer speculation to support the Plaintiff's claim, there is no basis for this court to disrupt the ALJ's determination regarding the authenticity of the Acknowledgment of Paternity. Accordingly, for the purposes of the Act, Kevin's paternity is established under 42 U.S.C. § 216(h)(3)(C)(i)(I).

In addition, under applicable New York law, a non-marital child is the legitimate child of his father where "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own." N.Y. E.P.T.L. § 4-1.2(a)(2)(C); see 42 U.S.C. § 416(h)(2)(A) (incorporating intestate rules where insured individual was domiciled at time of death). Here, substantial evidence supports the ALJ's determination that paternity was established through clear and convincing evidence and that the decedent openly and notoriously acknowledged Kevin as his child. The decedent signed a notarized acknowledgment of paternity, and told his father and sister that Kevin was his child. (Tr. 74, 87-

91, 102.) In addition, at the time of his death in 1994 the decedent had been residing with Kevin's mother for the past four and one-half years and was contributing to household costs. (See Tr. 58-59, 63, 103). A photograph also shows the decedent together with Nunez at the time Nunez was pregnant with Kevin. (Tr. 109-11). Indeed, the Plaintiff herself admits that Kevin may be the decedent's son. (Tr. 135.)

While the Plaintiff argues that Nunez should have agreed to submit Kevin to DNA testing, genetic testing is only one means to establish paternity under the SSA. See 42 U.S.C. § 1416(h); N.Y. E.P.T.L. § 4-1.2. Genetic testing is a costly procedure that is not covered by the SSA to resolve paternity disputes. (Tr. 136, 142.) Especially considering Nunez' modest means, her reluctance to subject her son to genetic testing is understandable and in no way casts doubt on the substantial evidence supporting Kevin's benefits claim. Given the multiple bases under the Act by which Kevin has established that he is the son of the decedent, the ALJ properly rejected the Plaintiff's request to deny Kevin benefits.

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED. The Clerk of the Court is instructed to close this case.

SO ORDERED.

Dated: August 17, 2005                                                    /s/ Nicholas G. Garaufis  
       Brooklyn, N.Y.                                                   Nicholas G. Garaufis  
                                                                                United States District Judge